

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Mr. NIMA PAHLAVAN,<br>　　　　　　　　　　*Plaintiff*,<br>　　　v.<br>DREXEL UNIVERSITY<br>COLLEGE OF MEDICINE,<br>　　　　　　　　　　*Defendant*. | CIVIL ACTION NO. **16  1715**<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

## COMPLAINT

Plaintiff, Nima Pahlavan ("Plaintiff" or "Mr. Pahlavan"), avers as follows:

1.　　Mr. Pahlavan was a medical student at Drexel University College of Medicine ("Drexel" or "DUCOM") from 2008 until his unlawful dismissal in April, 2014.

2.　　While Mr. Pahlavan was a medical student at DUCOM, he suffered from multiple disabilities, which entitled him to reasonable accommodations, with which he would have been able to complete DUCOM's program. DUCOM (1) failed to accommodate his disabilities and (2) penalized him for manifestations of his disabilities, in violation of the Americans with Disabilities Act and the Rehabilitation Act, and in violation of its contract with Mr. Pahlavan.

### JURISDICTION AND VENUE

3.　　This civil action arises under the laws of the United States, specifically, the Americans with Disabilities Act (42 U.S.C. § 12101, et seq.) and § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 701, et seq.). This Court therefore has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

4. The state law claims are so related to the claims that are within this Court's original jurisdiction that they form part of the same case or controversy. This Court therefore has supplemental jurisdiction over the state law claims in this case pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims set forth herein occurred within the jurisdiction of this Court.

6. No statute requires Plaintiff to exhaust administrative remedies before bringing this action.

7. Plaintiff, Mr. Pahlavan, is a resident of Pennsylvania.

8. Defendant, Drexel University College of Medicine, is a private medical school with its principal place of business located in Philadelphia, Pennsylvania.

## FACTS

9. Mr. Pahlavan enrolled as a medical student at DUCOM in 2008. He attended DUCOM as a medical student until DUCOM unlawfully dismissed him on April 11, 2014.

10. While Mr. Pahlavan was a medical student at DUCOM, he suffered from multiple disabilities, which entitled him to reasonable accommodations, with which he would have been able to complete DUCOM's program. Specifically, Mr. Pahlavan has been diagnosed with ADHD (mixed type), anxiety disorder, depression, and a reading disorder.

11. Mr. Pahlavan obtained his undergraduate degree in biology from Wheaton College in 1998.

12. After graduating from college, Mr. Pahlavan worked as a lab technician at Massachusetts General Hospital ("Mass General") for eight years, where he became interested in pursuing a career as a physician. His motivation for becoming a doctor was his desire to work with people and improve the lives of patients suffering from injuries and illnesses.

13. While working at Mass General, Mr. Pahlavan was formally diagnosed with ADHD.

14. From 2001-2005, Mr. Pahlavan enrolled in and completed post-baccalaureate medical school prerequisite courses through Harvard's Extension Program and Northeastern University. He then completed a part-time graduate degree program at Boston University while still working at Mass General. Mr. Pahlavan earned his M.A. in Medical Sciences. During his graduate program, Mr. Pahlavan's disabilities were accommodated by Boston University. He graduated with grades in the A-B+ range.

15. In 2005, Mr. Pahlavan took the Medical School Admissions Test ("MCAT"). He scored a 31, which is a competitive score for medical school applicants.

16. In 2007, Mr. Pahlavan began the process of applying to medical schools. After completing its rigorous admissions process, which included an in-person interview, DUCOM accepted Mr. Pahlavan to start in 2008.

**First and Second Years at DUCOM**

17. In the first two years of DUCOM's M.D. program, students take courses that provide the foundational knowledge for the practice of medicine.

18. Mr. Pahlavan first requested accommodations for his ADHD from Drexel's Office of Disability Services ("ODS") in the fall of 2008. He was approved for fifty percent extended time on all quizzes and exams, but was offered no other accommodations at that time.

19. During his first year at DUCOM (2008-2009), Mr. Pahlavan struggled with the pace and method of instruction in his courses. He remediated two classes over the summer of 2009, neurology and anatomy, which he passed.

20. Mr. Pahlavan's ADHD, anxiety, and learning difficulties became increasingly worse during his second year at DUCOM. He developed abnormal sleeping habits. Although he was granted time and a half on quizzes and exams, he struggled in his second-year courses and was required to remediate several exams. He passed all of them.

21. During his second year at DUCOM (2009-2010), Mr. Pahlavan sought treatment for anxiety, ADHD, and learning difficulties from DUCOM's psychiatrist, Dr. Diane Gottlieb. Dr. Gottlieb prescribed Mr. Pahlavan a number of medications, including Adderall, Wellbutrin, and Lexapro, to help manage his ADHD and anxiety symptoms. DUCOM's psychiatrist also began seeing him on a regular basis for therapy.

22. Mr. Pahlavan also sought assistance from DUCOM's psychologist, Dr. Janet Moore. Dr. Moore worked for a time with Mr. Pahlavan to address his anxiety issues and learning difficulties, until DUCOM told Mr. Pahlavan that he could not continue to see both Dr. Gottlieb and Dr. Moore. Forced to choose between the two, Mr. Pahlavan chose to continue working with Dr. Gottlieb.

23. Students in DUCOM's M.D. program are required to take and pass Step 1 of the United States Medical Licensing Examination ("Step 1 exam") following the completion of their

4

second year courses. After successfully passing all of his second year courses in May of 2010, Mr. Pahlavan began studying for the Step 1 exam.

24. Mr. Pahlavan applied for accommodations for his ADHD on the Step 1 exam and was granted fifty percent extended time. Dr. Samuel Parrish, the Dean of Students at the time, advised Mr. Pahlavan to take as much time as he need to study for Step 1 exam and assured him that doing so would not interfere with his ability to remain on track in the M.D. program and graduate on schedule.

25. Accordingly, Mr. Pahlavan postponed the start of his third-year clerkships and spent eighteen weeks preparing for the Step 1 exam. He not only passed the Step 1 exam, he did so with a score above the median.

**First Attempt at Third-Year Clerkships**

26. In the third year of DUCOM's M.D. program, students are required to complete six or twelve week "blocks" of clinical clerkships in the areas of medicine, surgery, pediatrics, family medicine, psychiatry, and obstetrics and gynecology ("ob/gyn").

27. Mr. Pahlavan began his third-year clerkships in November of 2010, which was twelve weeks later than the majority of his peers. He started at this time as a result of having taken extra time to study for the Step 1 exam – with DUCOM's approval.

28. Pursuant to DUCOM's grading policies, a student's clerkship grade is determined by the student's (1) performance in clinical settings and (2) score on the NBME subject examinations ("shelf exams") for the area of medicine associated with the clerkship. A student's performance in the clinical setting is evaluated by the attending physicians and residents responsible for supervising the student throughout the clerkship. Attending physicians and

residents provide input as to whether or not the student is meeting expectations in core competency areas such as patient care, medical knowledge, practice based learning and improvement, interpersonal and communication skills, professionalism, and systems-based practice.

29. Mr. Pahlavan was granted fifty percent extended time on all shelf exams, but DUCOM failed to afforded him reasonable accommodations for his ADHD or anxiety at his various clerkship sites.

30. Mr. Pahlavan passed his first clerkship, psychiatry, with a satisfactory grade. However, his anxiety and sleeping problems intensified as he progressed through successive clerkships from January 2011 to February 2012. Mr. Pahlavan received unsatisfactory grades in his medicine clerkship, pediatrics clerkship, and a marginal unsatisfactory grade in his surgery clerkship. Mr. Pahlavan's unsatisfactory grades in those clerkships were the result of issues that were manifestations of his unaccommodated ADHD, anxiety, and undiagnosed reading disorder.

31. Due to his deteriorating academic performance, Dr. Gottlieb referred Mr. Pahlavan to a psychologist, Dr. Thomas Swirsky-Sacchetti, for neuropsychological testing. Dr. Swirsky-Sacchetti performed a complete neuropsychological evaluation of Mr. Pahlavan. Cognitive testing results determined that Mr. Pahlavan had an IQ of 133, which is in the very superior range. Dr. Swirsky-Sachetti also diagnosed Mr. Pahlavan with ADHD and a reading disorder. He noted that Mr. Pahlavan self-reported symptoms of depression and recommended that he continue to be monitored and treated by a psychiatrist.

32. In February of 2012, as a result of his unsatisfactory performance in third-year clerkships and multiple Shelf Exam failures, Mr. Pahlavan was referred to DUCOM's Clinical

Promotions Committee ("the CPC"). The CPC initially decided to dismiss Mr. Pahlavan from DUCOM.

33. On the advice of Dr. Gottlieb, Mr. Pahlavan appealed the CPC's dismissal decision and requested a medical leave of absence to seek intensive treatment for his anxiety and sleep issues. He submitted all required medical documentation to support his need for a medical leave of absence in accordance with DUCOM's policies.

34. After considering Mr. Pahlavan's appeal, the CPC reversed its decision to dismiss Mr. Pahlavan and granted him a one-year medical leave of absence. The CPC informed Mr. Pahlavan that he would be permitted to remain enrolled in DUCOM and return to his studies following a one-year leave of absence subject to certain conditions, including passing a fitness for duty psychological evaluation, taking a clinical preparation course, retaking all of his third-year clerkships, and complying with the treatment recommendations of his psychiatrist.

35. Mr. Pahlavan's one-year medical leave of absence began on or about May 15, 2012. During his leave of absence, Mr. Pahlavan continued regular therapy with Dr. Gottlieb for intensive treatment for his anxiety and depression and worked with a sleep specialist to address his sleeping problems. He also used his medical leave of absence to adjust his medication regimen and work on improving his organizational skills.

**Second Attempt at Third-Year Clerkships**

36. On or about April 24, 2013, Mr. Pahlavan submitted a request for accommodations to the ODS. On the request form, Mr. Pahlavan indicated that he suffered from a learning disability and ADHD, which caused him to have difficulty sleeping, fatigue easily, and have difficulty thinking and concentrating.

7

37. Shortly after submitting his request for accommodations, Mr. Pahlavan met with an ODS staff member to discuss specific accommodations that he would need upon resuming his studies and retaking third-year clerkships. To assist him with reading, Mr. Pahlavan asked the staff member for textbooks to be provided on CDs and in PDF format, so that he could utilize a software program on his computer to read the text aloud while he followed along onscreen. Mr. Pahlavan also asked the ODS staff member whether there were any other accommodations that could be made available to him at clerkship sites. Rather than beginning an interactive process with Mr. Pahlavan to devise appropriate accommodations, the ODS staff member refused to help Mr. Pahlavan. ODS instructed Mr. Pahlavan that providing accommodations in the clinical setting was up to the individual sites.

38. ODS approved Mr. Pahlavan for the following, exclusively academic accommodations: 100 percent extended time on exams and quizzes, books on CDs, PDFs in accessible formats, and third-year clerkships scheduled in the Philadelphia area.

39. Although DUCOM approved Mr. Pahlavan to receive course textbooks on CDs or in accessible PDF format, he never received those materials for any of his repeat third-year clerkships.

40. On or about May of 2013, Mr. Pahlavan passed an external fitness for duty examination.

41. Mr. Pahlavan returned to DUCOM from his medical leave of absence in May of 2013. He participated in a clinical skills refresher course, taught by Dr. Novak. His assessment was that clinical skills were sufficient for him to begin his rotation.

8

42. The first two clerkships Mr. Pahlavan was scheduled to repeat were surgery and medicine. Both clerkships are twelve weeks long and are generally considered the most difficult of all the third-year clerkships. As such, DUCOM students are normally prohibited from scheduling surgery and medicine clerkships back to back. Mr. Pahlavan expressed concerns about taking surgery and medicine back to back in a conversation with Dr. Amy Fuchs, Senior Associate Dean for Student Affairs. She informed him that nothing could be done alter his schedule.

43. On or about July 1, 2013, Mr. Pahlavan began his repeat surgery clerkship.

44. On or about July 26, 2013, Mr. Pahlavan received a letter containing a conditional enrollment agreement from Dr. Fuchs, which he signed shortly thereafter. The conditional enrollment agreement outlined the conditions for Mr. Pahlavan's continued enrollment in DUCOM. Those conditions included mandatory participation in weekly psychotherapy sessions, continued compliance with the treatment plan recommended by his therapist, and receiving satisfactory or above grades in all repeat and future clinical coursework.

45. Mr. Pahlavan authorized his psychotherapist, Dr. Gottlieb, to provide DUCOM with monthly reports documenting his participation in psychotherapy and continued fitness for duty in medical school. On information and belief, Dr. Gottlieb shared those monthly reports to DUCOM.

46. Despite having full knowledge of the difficulties and limitations caused by Mr. Pahlavan's disabilities, and despite Mr. Pahlavan having requested clerkship accommodations of ODS, DUCOM failed to engage in the interactive process with Mr. Pahlavan to determine whether there were reasonable accommodations that could be made for him at his clerkship sites.

47.     As a result, Mr. Pahlavan was not provided with any accommodations for his anxiety, ADHD, or reading disorder at any of his repeat third-year clerkship sites.

48.     Mr. Pahlavan nonetheless successfully completed his surgery clerkship at the end of September and received a satisfactory grade. The comments in his surgery evaluation were extremely positive. Evaluators noted that Mr. Pahlavan was "a committed member of the team and proved to be a reliable colleague," and that he "has the work ethic, knowledge, and poise to advance in his clinical rotations."

49.     At some point before starting his medicine clerkship, Mr. Pahlavan met with Dr. Amy Fuchs, Senior Associate Dean for Student Affairs, to discuss his progress since returning from his medical leave of absence. During that meeting, Mr. Pahlavan mentioned that in his first attempt at the medicine clerkship, he had difficulty adjusting when he was reassigned to new attending physicians, residents, and intern teams on a frequent basis. He asked to be assigned to a group of evaluators that would remain consistent over the course of each sub-block. DUCOM ultimately did not grant that request with respect to his medicine clerkship.

50.     On or about September 23, 2013, Mr. Pahlavan began his medicine clerkship. He spent the first four week sub-block of the medicine clerkship at Hahnemann University Hospital ("HUH").

51.     Mr. Pahlavan's group of evaluating attending physicians and residents changed frequently during his first sub-block of the medicine clerkship at HUH. He experienced difficulty adjusting to their differing sets of expectations and obtaining reliable, accurate feedback about his performance.

10

52. After four weeks at HUH, Mr. Pahlavan was assigned to a four-week in-patient sub-block at Einstein Medical Center ("Einstein").

53. Mr. Pahlavan kept in constant contact with the members of the evaluation team at Einstein regarding his whereabouts. He was punctual except when absent or late because of attendance at his DUCOM-mandated psychotherapy sessions.

54. After a four-week sub-block at Einstein, Mr. Pahlavan spent the last four weeks of his medicine clerkship at an out-patient ambulatory medicine site, where he performed well.

55. Following his medicine clerkship, Mr. Pahlavan completed and passed his family medicine clerkship.

56. On or about January 27, 2014, Mr. Pahlavan received the final evaluation report from his medicine clerkship indicating that he had received an unsatisfactory grade. Mr. Pahlavan passed the shelf exam for medicine, but the evaluation report stated that he had not met expectations in several competency areas of his clinical performance.

57. The evaluation report contained negative comments regarding Mr. Pahlavan's lateness and noted that he "disappeared in the afternoons." While Mr. Pahlavan was absent in the afternoon during his medicine clerkship on a few occasions, he was absent because was attending mandated psychotherapy appointments.

58. At all relevant times, Dr. Janet Fitzpatrick, DUCOM's director of the third-year medicine clerkship and the chair of the CPC, was aware of Mr. Pahlavan's disabilities and aware of the fact that one of the conditions of his continued enrollment in DUCOM was attending weekly therapy appointments. On information and belief, she did not notify any of Mr. Pahlavan's clerkship site directors that he needed to be excused for his therapy appointments.

59. Mr. Pahlavan also received negative comments regarding the organization and quality of his notes, communication with other team members, and napping in the resident lounge—all issues that were directly attributable to his known, unaccommodated disabilities. Mr. Pahlavan did occasionally nap in the resident lounge, but only on breaks and never when he was otherwise supposed to be doing work.

60. While the evaluation noted that Mr. Pahlavan had a "mixed rapport" with patients, there was no evidence to suggest that Mr. Pahlavan was unprofessional or inappropriate with his patients. In fact, in her letter responding to Mr. Pahlavan's appeal of his medicine grade, Dr. Fitzpatrick conceded that the majority of evaluators believed that Mr. Pahlavan had a professional rapport with patients.

61. Mr. Pahlavan appealed the unsatisfactory grade he received in his medicine clerkship in accordance with DUCOM's appeals procedures. The first step in the appeals process was to appeal his unsatisfactory grade to the director of medicine clerkships, Dr. Fitzpatrick. Dr. Fitzpatrick declined to overturn Mr. Pahlavan's unsatisfactory grade. Mr. Pahlavan's next option was to appeal his grade to the Chair of the Medicine Department, Dr. James Reynolds. Dr. Reynolds also declined to overturn Mr. Pahlavan's unsatisfactory grade. Finally, Mr. Pahlavan appealed his grade to Dr. Moran, an interim Dean. Like Dr. Fitzpatrick and Dr. Reynolds, she found no reason to overturn Mr. Pahlavan's medicine clerkship grade.

62. On or about February 17, Mr. Pahlavan started his ob/gyn clerkship. During the ob/gyn clerkship, Mr. Pahlavan was going through the appeals process with respect to his unsatisfactory grade in his medicine clerkship, which had the effect of greatly increasing his anxiety and depression. While ob/gyn evaluators commented that Mr. Pahlavan's performance could have been more consistent, he met expectations across all competency areas. However,

Mr. Pahlavan failed his ob/gyn shelf exam by three points, which resulted in him receiving a marginal unsatisfactory grade for the ob/gyn clerkship.

63. Mr. Pahlavan's failure on the ob/gyn Shelf Exam was the result of the anxiety and depression he was experiencing in connection with the appeals process. In fact, Dr. Reynolds, despite knowing of Mr. Pahlavan's exam schedule and his request to reschedule on a date after the shelf exam, scheduled an in-person meeting regarding Mr. Pahlavan's appeal for the same day as his ob/gyn shelf exam, which significantly interfered with Mr. Pahlavan's focus and ability to concentrate on the exam.

**Final Dismissal**

64. On April 11, 2014, Mr. Pahlavan received a letter from Dr. Seema Barnwal, Assistant Dean for Student Affairs, informing him that the CPC had met to review his academic record and had decided to dismiss him from DUCOM. The reasons given for his dismissal were his unsatisfactory grade in his medicine clerkship and his marginal unsatisfactory grade in his ob/gyn clerkship.

65. Mr. Pahlavan appealed his dismissal from DUCOM to the CPC. The CPC upheld its dismissal decision.

66. Mr. Pahlavan then appealed the CPC's decision to dismiss him to the DUCOM's Dean, Dr. Daniel Schindlow. Dean Schindlow upheld the CPC's decision.

67. As a result of DUCOM's failure to engage in the interactive process with Mr. Pahlavan, he was not offered reasonable accommodations at his third-year clerkship sites, which led to him receiving an unsatisfactory grade in his medicine clerkship.

13

68.     In addition, evaluators in his medicine clerkship negatively assessed him for being late or absent when he was attending mandated psychotherapy sessions to receive treatment for his anxiety and depression. They also held against him the manifestations of his unaccommodated disabilities – and DUCOM adopted those negative assessments in making its decision to dismiss Mr. Pahlavan, despite its awareness of Mr. Pahlavan's disabilities.

69.     Because of DUCOM's discriminatory actions against Mr. Pahlavan, he has lost tuition and fees, lost future earnings and benefits, lost interest on government loans, and suffered emotional distress. His depression and anxiety have worsened since he was unlawfully dismissed from DUCOM, leaving him unable to obtain gainful employment of any kind.

## COUNT I
## **THE AMERICANS WITH DISABILITIES ACT OF 1990 (ADA)**

70.     Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

71.     DUCOM is subject to Title III of the ADA because it is a "private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes."

72.     DUCOM is also a "place of public accommodation" under Title III of the ADA because it is an "undergraduate, or postgraduate private school, or other place of education."

73.     At all relevant times, Plaintiff has suffered and continues to suffer from a number of disabilities, including ADHD, a reading disorder, depression, and anxiety disorder.

74. At all relevant times, Mr. Pahlavan's ADHD, anxiety disorder, depression, and reading disorder substantially limited one or more major life activities, including, *inter alia*, sleeping, learning, reading, concentrating, and thinking.

75. As a result, Mr. Pahlavan is, and at all relevant timeswas, a person with a disability entitled to protections of the ADA.

76. At all relevant times, DUCOM was subject to the requirements of the ADA with respect to Mr. Pahlavan.

77. Mr. Pahlavan was otherwise qualified to participate in DUCOM's M.D. program when DUCOM dismissed him, as evidenced by the fact that he had passed all year one and year two academic courses, passed Step 1 of the USMLE, passed the surgery and family medicine clerkships after he returned from a one-year medical leave of absence, and received positive comments on his surgery clerkship evaluation, family medicine evaluation, and for the ambulatory portion of his medicine clerkship evaluation.

78. DUCOM failed to engage in the interactive process with Mr. Pahlavan to determine whether there were reasonable accommodations that it could have provided to him at clerkship sites.

79. DUCOM's decision to dismiss Mr. Pahlavan failed to account for the fact that his unsatisfactory grade in the medicine clerkship was the result of DUCOM's failure to provide reasonable accommodations and failed to account for the fact that in the evaluation of his performance in the medicine clerkship, he was effectively penalized for manifestations of his unaccommodated disabilities and for attending mandated weekly psychotherapy sessions to treat his disabilities.

80. Accordingly, Mr. Pahlavan's disabilities were a motivating factor in DUCOM's decision to dismiss him and DUCOM therefore excluded Mr. Pahlavan from its program on the basis of his disability.

81. As a direct result of DUCOM's violations of the ADA, Mr. Pahlavan lost tuition and fees, interest on his loans, his ability to receive his medical degree and future earnings.

82. Mr. Pahlavan also suffered severe emotional damage as a result of DUCOM's violations of his rights under the ADA.

## COUNT II
### SECTION 504 OF THE REHABILITATION ACT OF 1973

83. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

84. DUCOM is a recipient of federal funds or assistance for the purposes of Section 504.

85. Mr. Pahlavan was a qualified handicapped person with respect to postsecondary and vocational education services under Section 504 because, at all relevant times, he was a handicapped person who met the academic and technical standards requisite to admission and participation in DUCOM's program.

86. DUCOM excluded Mr. Pahlavan from participation in, denied him the benefits of, and otherwise subjected him to discrimination under its programs or activities.

87. DUCOM failed engage in the interactive process with Mr. Pahlavan as required under Section 504's implementing regulations to determine what accommodations it could have

offered Mr. Pahlavan to ensure that he was not subject to discrimination based on his disabilities at his clerkship sites.

88. DUCOM used procedures and methods for evaluating Mr. Pahlavan's academic achievement that failed to ensure that the results of the evaluation represented Mr. Pahlavan's achievement in the course, but instead reflected his impairments.

89. As a direct result of DUCOM's discriminatory actions, Mr. Pahlavan received an unsatisfactory grade in his medicine clerkship and a marginal unsatisfactory grade in his ob/gyn clerkship, leading to his dismissal.

90. DUCOM's decision to dismiss Mr. Pahlavan was based on his disabilities.

91. As a direct result of DUCOM's violations of Section 504 of the Rehabilitation Act, Mr. Pahlavan lost tuition and fees, interest on his loans, his ability to receive his medical degree and future earnings.

92. Mr. Pahlavan also suffered severe emotional damage as a result of DUCOM's violations of his rights under Section 504.

## COUNT III
## BREACH OF CONTRACT

93. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

94. At all relevant times, Mr. Pahlavan and DUCOM were operating under a contract.

95. The contract between DUCOM and Mr. Pahlavan consisted of, *inter alia*, the written guidelines, policies and procedures as contained in the written materials distributed to

Mr. Pahlavan over the course of his enrollment in DUCOM, as well as the brochures, course offering bulletins, and other official statements, policies and publications of DUCOM.

96. DUCOM's Student Handbook provides that "in the administration of its admissions policies, educational policies, employment policies, scholarship and loan programs, and all other University administered programs and activities, the University prohibits discrimination against individuals on the basis of…disability."

97. DUCOM breached its contract with Mr. Pahlavan by discriminating against him based on his disabilities when it failed to make reasonable accommodations for him at his clerkship sites and when it dismissed him.

98. As a result of DUCOM's breach of contract, Mr. Pahlavan suffered and continues to suffer substantial financial harm, injury and damage, and will continue to do so into the future.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

a. Award Plaintiff compensatory damages in an amount to be assessed at time of trial;

b. Award Plaintiff costs of suit incurred in this action;

c. Award Plaintiff such other relief that this Court may deem just and proper.

Dated: April 11, 2016

*/s/ Nima Pahlavan*

Nima Pahlavan
311 North 13th Street
Philadelphia, PA 19107
(216) 792-2967
Nimapahl@yahoo.com